# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### CHARLOTTE DIVISION
### CASE NO.:  3:21-CV-00517

| | |
|---|---|
| CYNTHIA PUSEY VIGDOR; ROBERT VIGDOR; VANESSA KROMBEEN; VASHISTA KOKKIRALA; JESSICA HUCK; RICHARD SMITHSON; RONALD EASTER; and PROVIDENCE ANESTHESIOLOGY ASSOCIATES, P.A., on behalf of themselves and other similarly situated persons, | ) ) ) ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) |
| UNITEDHEALTHCARE INSURANCE COMPANY; UNITEDHEALTHCARE OF NORTH CAROLINA, INC.; UMR, INC., UNITEDHEALTH GROUP INCORPORATED, | ) ) ) ) ) |
| Defendants. | ) |

## PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR REMAND

Plaintiffs submit this Memorandum of Law in support of their motion to remand under W.D.N.C. Local Rule 7.1(c).

This case must be remanded because the Complaint does not assert any claims arising under Federal law—only North Carolina state law claims based on North Carolina statutes. Plaintiffs' claims are "rate of payment" claims which are not preempted by ERISA.  In fact, UHC recently lost a motion to remand on this same exact issue in the Eastern District of Pennsylvania in a lawsuit brought by an out-of-network physician group against UHC.  As in that case, this matter should be remanded to state court.

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................................... ii

NATURE OF THE MATTER BEFORE THE COURT ............................................... 1

QUESTION PRESENTED ........................................................................................... 1

PROCEDURAL HISTORY .......................................................................................... 1

STATEMENT OF FACTS ........................................................................................... 2

LEGAL STANDARD ................................................................................................... 4

 I. REMOVAL OF STATE CIVIL ACTIONS TO FEDERAL DISTRICT COURT 4

 II. THE WELL-PLEADED COMPLAINT RULE AND ERISA PREEMPTION ..... 5

ARGUMENT ................................................................................................................ 8

 I. PLAINTIFFS' CLAIMS ARE "RATE OF PAYMENT" CLAIMS AND NOT "RIGHT TO PAYMENT" CLAIMS, WHICH ARE NOT PREEMPTED BY ERISA ................................................................................................................ 8

 II. PLAINTIFFS' CLAIMS DO NOT RELATE TO ERISA PLANS, BUT ARISE SOLELY OUT OF NORTH CAROLINA STATUTE AND COMMON LAW. 12

CONCLUSION ............................................................................................................ 15

CERTIFICATE OF SERVICE ................................................................................... 17

Case 3:21-cv-00517-MOC-DCK Document 20 Filed 10/29/21 Page 2 of 22

# TABLE OF AUTHORITIES

**Cases**

Aetna Health Inc. v. Davila, 542 U.S. 200 (2004)............................................................ 5

Blue Cross v. Anesthesia Care Assocs. Med. Group, Inc., 187 F.3d 1045 (9th Cir.1999)............. 8

Blue Moon Fiduciary, LLC v. Hutcheson, No. 1:12CV78 (M.D.N.C. Aug. 14, 2014) ............... 13

Brown v. Blue Cross Blue Shield of Tenn., Inc., 827 F.3d 543 (6th Cir. 2016) ....................... 6, 9

Charlotte-Mecklenburg Hosp. Auth. v. Kinsinger, No. 3:18-CV-38-FDW-DCK (W.D.N.C. June 21, 2018) ................................................................................................................ 4

Connecticut State Dental Ass'n v. Anthem Health Plans, Inc., 591 F.3d 1337 (11th Cir. 2009)... 9

Country Club of Johnston County, Inc. v. U.S. Fid. & Guar. Co., 150 N.C. App. 231, 563 S.E.2d 269 (2002)....................................................................................................... 8

Darcangelo v. Verizon Commc'ns, Inc., 292 F.3d 181 (4th Cir. 2002) ............................... 5, 6, 14

Emergency Care Servs. of Pennsylvania, P.C. v. UnitedHealth Grp., Inc., 515 F. Supp. 3d 298 (E.D. Pa. 2021)........................................................................................... 10, 11, 13, 14

Franciscan Skemp Healthcare, Inc. v. Cent. States Joint Bd. Health & Welfare Tr. Fund, 538 F.2d 594 (7th Cir. 2008) .................................................................................... 13

Gray v. N.C. Ins. Underwriting Ass'n, 352 N.C. 61, 529 S.E.2d 676 (2000) ............................... 7

Greenville Hosp. Sys. v. Employee Welfare Ben. Plan for Employees of Hazelhurst Mgmt. Co., 628 Fed. Appx. 842 (4th Cir. 2015)....................................................................... 9

Gulf-to-Bay Anesthesiology Assocs. V. UnitedHealthCare of Fla., Inc., 2018 WL 3640405 (M.D. Fla. July 20, 2018)............................................................................... 7, 11

Hansen v. Grp. Health Coop., 902 F.3d 1051 (9th Cir. 2018)................................................. 10, 13

HCA Health Servs. of Virginia, Inc. v. CoreSource, Inc., No. 3:19-CV-406 (E.D. Va. July 17, 2020) ....................................................................................................... 9

In re Blackwater Sec. Consulting, LLC, 460 F.3d 576 (4th Cir. 2006)......................................... 4

Kearney v. Blue Cross & Blue Shield of N. Carolina, 233 F. Supp. 3d 496 (M.D.N.C. 2017) ..... 9

Lone Star OB/GYN Assocs. v. Aetna Health Inc., 579 F.3d 525 (5th Cir. 2009)................ passim

Mackey v. Lanier Collection Agency & Serv., Inc., 486 U.S. 825, 108 S.Ct. 2182, 100 L.Ed.2d 836 (1988)........................................................................................................ 6

Mason v. Int'l Bus. Machs., Inc., 543 F. Supp. 444 (M.D.N.C. 1982)........................................ 4, 5

McLeod Reg'l Med. Ctr. of Pee Dee, Inc. v. Trustmark Life Ins. Co., No. CV 4:09-750-RBH, (D.S.C. Nov. 4, 2010) ......................................................................................... 9

Metro. Life Ins. Co. v. Taylor, 481 U.S. 58, 95 L. Ed. 2d 55 (1987) ........................................... 15

Metro. Life Ins. Co. v. Taylor, 481 U.S. 58, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987) .................... 5

Mulcahey v. Columbia Organic Chems. Co., 29 F.3d 148 (4th Cir. 1994) ............................. 4, 5, 8

N. Jersey Brain & Spine Ctr. v. United Healthcare Ins. Co., No. CV 18-15631 (D.N.J. Nov. 25, 2019), report and recommendation adopted, No. 18-15631 (D.N.J. Dec. 10, 2019)... 9, 11, 14

Nat'l Life Ins. Co. v. Kiser, No. 5:09-CV-87-FL (E.D.N.C. Mar. 18, 2010) ................................. 13

Nelson v. Hartford Underwriters Ins. Co., 177 N.C. App. 595 (2006)............................................ 8

New Jersey Carpenters & the Trustees Thereof v. Tishman Const. Corp. of New Jersey, 760 F.3d 297 (3d Cir. 2014) ............................................................................................ 14

New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co., 514 U.S. 645, 131 L. Ed. 2d 695 (1995) ........................................................................... 6

Pascack Valley Hosp. v. Local 464A UFCW Welfare Reimbursement Plan, 388 F.3d 393 (3d Cir. 2004), as amended (Dec. 23, 2004) ....................................................... 10, 13

Petty v. Carolina Biological Supply, No. 1:05CV00954 (M.D.N.C. Sept. 5, 2006) ..................... 12

Prince v. Sears Holdings Corp., 848 F.3d 173 (4th Cir. 2017).................................................. 5, 6

Sonoco Products Co. v. Physicians Health Plan, Inc., 338 F.3d 366 (4th Cir. 2003).................... 6

Willard v. UPS, 413 F. Supp. 2d 593 (M.D.N.C. 2005) ................................................................ 5

**Statutes**

28 U.S.C. § 1331 ................................................................................................................... 1, 4

28 U.S.C. § 1446 ....................................................................................................................... 1

28 U.S.C. § 1447(c) .................................................................................................................. 4

29 U.S.C. § 1001 ....................................................................................................................... 1

(ERISA § 502) 29 U.S.C. § 1132 ...................................................................................... *passim*

29 U.S.C. § 1144 .................................................................................................................... 6, 9

N.C. Gen. Stat. § 58-3-200(d)..................................................................................... *passim*

N.C. Gen. Stat. § 58–63–15(11) ................................................................................ 10

N.C. Gen. Stat. § 75–1.1 ........................................................................................ 9, 10

**Rules**

W.D.N.C. Local Rule 7.1(c) ........................................................................................ i

## NATURE OF THE MATTER BEFORE THE COURT

Under the allegations in the Complaint, this Court lacks subject matter jurisdiction over this case. Plaintiffs' claims all arise entirely under North Carolina law and can be fully and finally determined without any consideration of a federal law.

## QUESTION PRESENTED

Does this Court lacks subject matter jurisdiction because the Plaintiffs' claims are entirely based on North Carolina state laws relating to the "rate of payment" owed by an insurance company for medical services?

## PROCEDURAL HISTORY

On August 16, 2021, Plaintiffs filed this action in Mecklenburg County Superior Court for violation of the North Carolina Patient Protection Act, N.C. Gen. Stat. § 58-3-200(d), and North Carolina Unfair or Deceptive Trade Practices Act, N.C. Gen. Stat. § 75-1.1. Accepting service on September 1, 2021, the Defendants removed on September 29 to this Court, citing 28 U.S.C. § 1331, 1441, and 1446. (Doc. 1). As their basis for removal, Defendants assert that Plaintiffs' claims "arise under and are completely preempted by the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. §§ 1001, *et seq.* ("ERISA")." (Doc. 1, at 1).

On October 20, 2021, the Defendants filed a Motion to Dismiss, primarily based on ERISA preemption. Plaintiffs will oppose the motion.

Plaintiffs now also ask the Court to remand this case to North Carolina state court because this Court lacks subject matter jurisdiction over this case and the exclusively North Carolina state law claims raised by Plaintiffs.

1

## STATEMENT OF FACTS

The Patient Plaintiffs and proposed class representatives in this case are residents of North Carolina who received medical care from Providence Anesthesiology Associates, P.A. ("Providence"), a leading anesthesia provider in North Carolina. (Compl.[1] ¶¶ 1-6, 22, 23-73.) Providence was a longtime member of UHC's provider network through March 2020. (*Id.* ¶¶ 7, 17, 22.)

In September 2019, UHC started negotiating with Providence for lower contract rates – but demanded that Providence accept a 60% rate cut to stay in-network, which they knew was unreasonable and would be impossible for any competent medical provider to accept. UHC's actions are part of a scheme to exploit new legislation against surprise billing practices at the Federal level. (*Id.* ¶¶ 86-87.) UHC never made a fair or good faith offer to Providence, despite the fact that UHC never identified any issues with Providence's anesthesia services, certificates, licensure, or otherwise identified any problem that would justify terminating its contract with Providence. (*Id.* ¶¶ 89-90.)

UHC terminated Providence, knowing Providence's out-of-network status would harm patients. UHC planned to make their own insureds responsible for unplanned medical bills in the thousands of dollars that UHC knew would result from its exploitative negotiation tactics. (*Id.* ¶¶ 92, 94, 95.) Since March 1, 2020, UHC has refused to reimburse Providence, Patient Plaintiffs, and other class members for medical care provided to patients at a reasonable rate. (*Id.* ¶ 97.)

---

[1] The Complaint is filed as Exhibit A to Defendants' Removal Papers at Docket Entry 1, and can be found at Doc. 1 at 10-36.

The Patient Plaintiffs have suffered due to UHC's actions. They have had surgical procedures at in-network facilities in North Carolina, but Providence's anesthesia care has been out-of-network, leading to them receiving large unexpected bills for out-of-network care.

For example, Plaintiff Cynthia Vigdor had spinal surgery in July 2020. (*Id.* ¶ 23.) She had heard that Providence was out-of-network before her procedure and called UHC to find out what to do. UHC told her that Providence's out-of-network status would be "no problem" for her. But after her surgery, UHC only paid $189.30 of her bill for anesthesia services. She has been left with a bill for $4,510.70 which UHC has failed to resolve. (*Id.* ¶¶ 25, 27—28.)

Each of the Patient Plaintiffs have stories similar to Ms. Vigdor, as set forth in the Complaint. UHC has paid a portion of the bill, and has not disputed that they have a right to payment. What UHC has done, however, is pay very little on these claims, and forced their insureds to bear the brunt of Providence's out-of-network status—a status UHC unilaterally caused. The Patient Plaintiffs have taken many steps to try to resolve their claims by filing appeals with UHC and the North Carolina Department of Insurance ("NC DOI"), to no avail.

Perhaps UHC's tactics are legal in other states. Perhaps they are legal in cases where Federal law exclusively applies. But they are not legal under North Carolina law. UHC's refusal to reimburse Providence's patients at a reasonable rate is in violation of N.C. Gen. Stat. § 58-3-200(d), the Patient Protection Act, which prohibits insurers from "penaliz[ing] an insured or subject[ing] an insured to the out-of-network benefit levels offered under the insured's approved health benefit plan . . . unless contracting health care providers able to meet health needs of the insured are reasonable available to the insured without unreasonable delay." N.C. Gen. Stat. § 58-3-200(d); (Compl. ¶¶ 120—21).

Providence helped bring this pattern of out-of-network underpayments by UHC to the attention of the NC DOI, and assisted UHC members in appealing their bills to UHC. (*Id.* ¶¶ 110—12.) When patients have fully-insured plans (as opposed to plans self-insured by employers), the NC DOI has been investigating those claims when complaints are made.

The Patient Plaintiffs have now brought this case to stop UHC from penalizing its insureds in violation of the Patient Protection Act. Providence has joined the patients as a Plaintiff. UHC's refusal to reimburse its insureds at a reasonable rate for services received from Providence after UHC unilaterally terminated Providence from its network is a direct violation of the Patient Protection Act. UHC's scheme is also an unfair or deceptive trade practice, and actionable under N.C. Gen. Stat. § 75-1.1, *et seq.*

## LEGAL STANDARD

## I.  REMOVAL OF STATE CIVIL ACTIONS TO FEDERAL DISTRICT COURT

A defendant may remove a state civil action to federal district court where the action is one "of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a). This, of course, includes civil cases "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. However, "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). See also, Charlotte-Mecklenburg Hosp. Auth. v. Kinsinger, No. 3:18-CV-38-FDW-DCK, 2018 WL 3069178, at *1 (W.D.N.C. June 21, 2018).

"Removal of civil cases to federal court is an infringement on state sovereignty," Mason v. Int'l Bus. Machs., Inc., 543 F. Supp. 444, 445 (M.D.N.C. 1982), and therefore the Court must "construe [removal jurisdiction] strictly in light of the federalism concerns inherent in that form of federal jurisdiction." In re Blackwater Sec. Consulting, LLC, 460 F.3d 576, 583 (4th Cir. 2006). The burden is on the party seeking removal to demonstrate that federal jurisdiction is

4

proper. Mulcahey v. Columbia Organic Chems. Co., 29 F.3d 148, 151 (4th Cir. 1994). Failure

to meet this burden "generally constitutes an adequate ground for remand to state court," Mason,

543 F. Supp. at 445, and remand is necessary if federal jurisdiction is doubtful, Mulcahey, 29

F.3d at 151. "This is because [a] plaintiff's right to select the forum for [its] claim is stronger

than defendants' right to remove." Willard v. UPS, 413 F. Supp. 2d 593, 597 (M.D.N.C. 2005).

## II.    THE WELL-PLEADED COMPLAINT RULE AND ERISA PREEMPTION

"To determine whether a plaintiff's claims 'arise under' the laws of the United States,

courts typically use the 'well-pleaded complaint rule,' which focuses on the allegations of the

complaint." Prince v. Sears Holdings Corp., 848 F.3d 173, 177 (4th Cir. 2017) (quoting Aetna

Health Inc. v. Davila, 542 U.S. 200, 207 (2004)). An exception to the well-pleaded complaint

rule occurs when a federal statute completely preempts state law causes of action. Aetna, 542

U.S. at 207–08. "[C]omplete preemption 'converts an ordinary state common law complaint into

one stating a federal claim." Darcangelo v. Verizon Commc'ns, Inc., 292 F.3d 181, 187 (4th Cir.

2002) (quoting Metro. Life Ins. Co. v. Taylor, 481 U.S. 58, 65, 107 S.Ct. 1542, 95 L.Ed.2d 55

(1987) (internal quotation marks omitted)).

ERISA was enacted to "supersede any and all State laws insofar as they may now or

hereafter relate to any employee benefit plan" as described in the statutory scheme. 29 U.S.C.

§ 1144(a). ERISA's civil enforcement provision (§ 502(a), codified at 29 U.S.C. § 1132(a)),

allows a participant or beneficiary of an ERISA plan to bring a civil action "to recover benefits

due to [the participant or beneficiary] under the terms of [their] plan, to enforce [their] rights

under the terms of the plan, or to clarify [their] rights to future benefits under the terms of the

plan . . ." 29 U.S.C. § 1132(a)(1)(B).

Courts use a three-part test to determine whether complete preemption exists under

ERISA:

Case 3:21-cv-00517-MOC-DCK   Document 20   Filed 10/29/21   Page 10 of 22

> (1) the plaintiff must have standing under § 502(a) to pursue its claim; (2) its claim must "fall[ ] within the scope of an ERISA provision that [it] can enforce via § 502(a)"; and (3) the claim must not be capable of resolution "without an interpretation of the contract governed by federal law," i.e., an ERISA-governed employee benefit plan.

Prince v. Sears Holdings Corp., 848 F.3d 173, 177 (4th Cir. 2017) (quoting Sonoco Products Co. v. Physicians Health Plan, Inc., 338 F.3d 366, 372 (4th Cir. 2003)) (alterations in original).

ERISA preemption is broad but not universal. New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co., 514 U.S. 645, 655, 131 L. Ed. 2d 695 (1995) ("If 'relate to' were taken to extend to the furthest stretch of its indeterminacy, then for all practical purposes pre-emption would never run its course, for '[r]eally, universally, relations stop nowhere,' H. James, Roderick Hudson xli (New York ed., World's Classics 1980)."). Thus, as the U.S. Supreme Court has held, many "lawsuits against ERISA plans for run-of-the-mill state-law . . . torts committed by [the] ERISA plan" are not preempted, even though these suits "obviously affect[ ] and involv[e] ERISA plans and their trustees." Mackey v. Lanier Collection Agency & Serv., Inc., 486 U.S. 825, 833, 108 S.Ct. 2182, 100 L.Ed.2d 836 (1988); see also Darcangelo v. Verizon Commc'ns, Inc., 292 F.3d 181, 191 (4th Cir. 2002).

ERISA Section 502 gives plan participants and beneficiaries the right to sue to force disclosure of certain information, to recover benefits due under the plan, to clarify the right to future benefits, or to enforce rights under ERISA or the plan. 29 U.S.C. §§ 1132(a)(1)-(4).

In determining whether a claim falls within § 502(a), courts have distinguished between a "rate of payment" claim and a "right of payment" claim. E.g., Brown v. Blue Cross Blue Shield of Tenn., Inc., 827 F.3d 543, 548 (6th Cir. 2016). Rate of payment claims do not fall under § 502(a) and are not preempted. Id.; see also Lone Star OB/GYN Assocs. v. Aetna Health Inc., 579 F.3d 525, 530–32 (5th Cir. 2009). This includes rate of payment claims brought by out-of-

network providers and patients. Gulf-to-Bay Anesthesiology Assocs. V. UnitedHealthCare of Fla., Inc., 2018 WL 3640405, at *3 (M.D. Fla. July 20, 2018) (remanding rate-of-payment dispute between out-of-network provider and insurer)[2].

The distinction between right to payment claims and rate of payment claims has been recognized by multiple Circuits (as cited below), because typically rate of payment claims are governed under State law. See also 29 U.S.C. § 1144 (b)(2)(A) ("nothing in [ERISA's preemption sub-section] shall be construed to exempt or relieve any person from any law of any State which regulates insurance, banking, or securities.")

In this case, Plaintiffs have raised claims under two North Carolina state laws which regulate the practice of insurance: the North Carolina Patient Protection Act, N.C. Gen. Stat. § 58-3-200(d), and the Unfair or Deceptive Trade Practices Act, N.C. Gen. Stat. § 75-1.1, et seq.

North Carolina's Patient Protection Act provides that an insurer cannot subject its insured to out-of-network benefit levels as a penalty for the insurer deciding to cut providers out of its contracts:

> No insurer shall penalize an insured or subject an insured to the out-of-network benefit levels offered under the insured's approved health benefit plan, including an insured receiving an extended or standing referral under G.S. 58-3-223, unless contracting health care providers able to meet health needs of the insured are reasonably available to the insured without unreasonable delay.

N.C. Gen. Stat. § 58-3-200(d).

Under North Carolina law, a remedy for violation of the unfair claim settlement practices statute is under N.C. Gen. Stat. § 75–1.1, the unfair or deceptive trade practices statute. Gray v. N.C. Ins. Underwriting Ass'n, 352 N.C. 61, 71, 529 S.E.2d 676, 683 (2000) (holding "conduct that violates subsection (f) of N.C.G.S. § 58–63–15(11) constitutes a violation of N.C.G.S. § 75–

---

[2] This M.D. Fla. opinion is Exhibit 1.

1.1, as a matter of law"); Country Club of Johnston County, Inc. v. U.S. Fid. & Guar. Co., 150 N.C. App. 231, 246, 563 S.E.2d 269, 279 (2002) ("It follows that the other prohibited acts listed in N.C. Gen. Stat. § 58–63–15(11) are also acts which are unfair, unscrupulous, and injurious to consumers, and that such acts therefore fall within the 'broader standards' of N.C. Gen. Stat. § 75–1.1."); Nelson v. Hartford Underwriters Ins. Co., 177 N.C. App. 595, 608 (2006).

## ARGUMENT

As the party claiming federal jurisdiction, Defendants have the burden showing it has met the requirements for removal. E.g., Mulcahey, 29 F.3d at 151. Defendants have failed to meet that burden, because they cannot demonstrate that Plaintiffs' claims arise under federal law. Plaintiffs' claims are rate of payment claims which are not preempted by ERISA.

## I. PLAINTIFFS' CLAIMS ARE "RATE OF PAYMENT" CLAIMS AND NOT "RIGHT TO PAYMENT" CLAIMS, WHICH ARE NOT PREEMPTED BY ERISA

Plaintiffs are not challenging their "right to payment" in this case—and indeed UHC has made payments on these claims—but instead have brought claims based on UHC's unfair *rate of payment*. (Compl. ¶¶ 1—6, 33, 40, 47, 57, 65, 73, 97 ("After March 1, 2020, UHC has refused to reimburse Providence, Plaintiffs, and other class members for medical care provided to Plaintiffs at a reasonable rate."), 108—09 ("UHC has failed to honor contractual wrap network obligations in order to reduce its payments to Providence to below reasonable, mutually-agreed rates"), 121, 135—37, 150—52.)

Multiple Circuits have consistently held that "rate of payment" claims do not fall under ERISA's enforcement provision § 502(a) and are therefore not completely preempted by ERISA. E.g., Blue Cross v. Anesthesia Care Assocs. Med. Group, Inc., 187 F.3d 1045, 1051 (9th Cir.1999); Lone Star OB/GYN Assocs. v. Aetna Health Inc., 579 F.3d 525, 530–32 (5th Cir. 2009); Connecticut State Dental Ass'n v. Anthem Health Plans, Inc., 591 F.3d 1337, 1350 (11th

Cir. 2009); Brown v. Blue Cross Blue Shield of Tenn., Inc., 827 F.3d 543, 548 (6th Cir. 2016) (acknowledging and adopting the distinction between right to payment claims, which are preempted by ERISA, and rate of payment claims, which are not); N. Jersey Brain & Spine Ctr. v. United Healthcare Ins. Co., No. CV 18-15631, 2019 WL 6317390, (D.N.J. Nov. 25, 2019), report and recommendation adopted, No. 18-15631, 2019 WL 6721652 (D.N.J. Dec. 10, 2019).

The Fourth Circuit has also noted the existence of this uniform case law, though it has not yet had the occasion to directly apply it. Greenville Hosp. Sys. v. Employee Welfare Ben. Plan for Employees of Hazelhurst Mgmt. Co., 628 Fed. Appx. 842, 846 (4th Cir. 2015) (citing six circuit court decisions, all recognizing the distinction). But the Middle District of North Carolina and other district courts in this Circuit have recognized that rate of payment claims are not preempted by ERISA. Kearney v. Blue Cross & Blue Shield of N. Carolina, 233 F. Supp. 3d 496, 504 (M.D.N.C. 2017) (rate of payment claim would not be preempted, but claim asserted there was a right to payment claim); McLeod Reg'l Med. Ctr. of Pee Dee, Inc. v. Trustmark Life Ins. Co., No. CV 4:09-750-RBH, 2010 WL 11650679, at *5 (D.S.C. Nov. 4, 2010) (acknowledging decisions from the Fifth, Ninth, and Third Circuits which hold that "rate of payment" claims are not completely preempted by ERISA); HCA Health Servs. of Virginia, Inc. v. CoreSource, Inc., No. 3:19-CV-406, 2020 WL 4036197, at *3 n. 2 (E.D. Va. July 17, 2020) ("In any event, § 502 cannot completely preempt the Hospital's claims because this case involves a dispute over a 'rate of payment' and not a 'right to payment.'").

In the Fifth Circuit case Lone Star OB/GYN, the plaintiff medical provider had a Provider Agreement with defendant Aetna. The plaintiff alleged that defendant breached the Provider Agreement by failing to pay the correct contractual rates for services rendered. Lone

<u>Star OB/GYN Assocs.</u>, 579 F.3d at 530–32. The Provider Agreement even referenced the copay/coinsurance/deductible amounts set forth in an ERISA plan. <u>Id.</u> at 531. The Fifth Circuit held that, because the claim implicates the *rate of payment*, rather than the right to payment, it is not preempted by ERISA—even where the Provider Agreement cross-referenced an ERISA plan. <u>Id.</u> In other words, where the plaintiff alleges rate of payment claims, "mere consultation of an ERISA plan is not enough to bring the claims within the scope of § 502(a)." <u>Id.</u> at 530.

Similarly, in <u>Hansen v. Grp. Health Coop.</u>, 902 F.3d 1051, 1059-60 (9th Cir. 2018), the Ninth Circuit held that the controlling question is the "origin of the duty, not its relationship with health plans." <u>Id.</u> The <u>Hansen</u> Court held that the claims in that case were not preempted because the duty allegedly violated "ar[ose] under state law, not under the terms of an ERISA plan." <u>Id.</u> Likewise, in <u>Pascack Valley Hosp. v. Local 464A UFCW Welfare Reimbursement Plan</u>, 388 F.3d 393 (3d Cir. 2004), <u>as amended</u> (Dec. 23, 2004), the Third Circuit held that the claims were not completely preempted by ERISA—even though the claims at issue "derived from an ERISA plan, and exist[ed] 'only because' of that plan," because the right to recovery depended on duties "independent of the Plan itself. <u>Id.</u> at 402.

UHC is very familiar with the legal distinction between right of payment and rate of payment claims. They lost a motion to remand earlier this year on this exact same issue, in a lawsuit brought by a group of emergency physicians who are not in-network. In <u>Emergency Care Servs. of Pennsylvania, P.C. v. UnitedHealth Grp., Inc.</u>, 515 F. Supp. 3d 298 (E.D. Pa. 2021)[3], the federal district court remanded to state court because the claims asserted were rate of payment claims.

---

[3] Copy submitted as Exhibit 2.

The factual scenario in that case is analogous to this action: plaintiffs, who are out-of-network healthcare providers, alleged that UHC paid a portion of the at-issue claims, but engaged in an unlawful course of dealing resulting in the claims being systematically paid at a drastically reduced rate. The district court, noting the similar facts previously also asserted in N. Jersey Brain & Spine Ctr. v. United Healthcare Ins. Co., No. CV 18-15631, 2019 WL 6317390, (D.N.J. Nov. 25, 2019), report and recommendation adopted, No. 18-15631, 2019 WL 6721652 (D.N.J. Dec. 10, 2019), held that the plaintiffs' rate of payment claims were not preempted by ERISA, and remanded the claims to state court. In fact, noting that the law on this issue is so clear, the plaintiffs even asked for an award of attorneys' fees. The court denied the fee request, but expressed some sympathy due to the fact that UHC's removal was "contrary to the reasoning and holdings of a number of cases[.]" Emergency Care Servs., 515 F. Supp. 3d at 311.

UHC also lost on this same issue in a 2018 decision from the Middle District of Florida. In Gulf-to-Bay Anesthesiology Associates, LLC v. UnitedHealthcare of Florida, Inc., No. 8:18-CV-233-EAK-AAS, 2018 WL 3640405 (M.D. Fla. July 20, 2018). In Gulf-to-Bay, UHC terminated a previously in-network anesthesiology provider. Id. at *1. Thereafter, though UHC would reimburse for some costs, UHC "failed to reimburse . . . at the full rate [plaintiff] is entitled to under Florida statutory and common law." Id. The plaintiff raised claims under Florida statutory and common law for underpayment for medically necessary anesthesiology services. Id. The court held that as the plaintiff's claims were "rate of payment" claims they were not preempted by ERISA. Id. at *2.

Here, just like in Emergency Care Servs. and Gulf-to-Bay, the dispute with UHC is not over the right to payment, but to the rate of payment. UHC paid a portion, but not the full

amount, of the claims. The claims are not preempted by ERISA and therefore do not create a basis for removal.

## II. PLAINTIFFS' CLAIMS DO NOT RELATE TO ERISA PLANS, BUT ARISE SOLELY OUT OF NORTH CAROLINA STATUTE AND COMMON LAW.

Plaintiffs' claims arise out of UHC's violation of the Patient Protection Act, N.C. Gen. Stat. § 58-3-200(d), as actionable under North Carolina's Unfair or Deceptive Trade Practices Act, N.C. Gen. Stat. § 75-1.1, *et seq*. (Compl. ¶¶ 134—56.) UHC has also violated its contracts with its insureds (including Patient Plaintiffs) by refusing to reimburse Patient Plaintiffs and other class members at a reasonable, fair rate. (*Id.* ¶ 150.)

The Patient Protection Act applies specifically to North Carolinians with insurance contracts, and the Patient Protection Act places distinct and separate duties on UHC to refrain from penalizing its insureds for receiving necessary out-of-network care. *See* N.C. Gen. Stat. § 58-3-200(d). UHC's violation of the Patient Protection Act also constitutes an unfair or deceptive trade practice under N.C. Gen. Stat. § 75-1.1. Research does not find any reported decisions in federal court based upon N.C. Gen. Stat. § 58-3-200(d) – and this makes sense because any such claims would not be preempted by ERISA. Plaintiffs are not seeking to enforce ERISA or bring a claim that can be brought under ERISA: Plaintiffs are seeking to enforce the North Carolina Patient Protection Act.

While there are certainly federal cases holding that breach of contract claims and claims under N.C. Gen. Stat. § 75-1.1 can be preempted by ERISA, those are cases where the claims were based on, or sought enforcement of, duties owed under an ERISA plan or fiduciary obligations owed under ERISA. E.g., Petty v. Carolina Biological Supply, No. 1:05CV00954, 2006 WL 2571047, at *6 (M.D.N.C. Sept. 5, 2006) (holding Chapter 75 claim completely preempted by ERISA because claim was for breach of fiduciary duties owed to the plan

12

beneficiary under ERISA); <u>Blue Moon Fiduciary, LLC v. Hutcheson</u>, No. 1:12CV78, 2014 WL 4063428, at *8 (M.D.N.C. Aug. 14, 2014) (holding Chapter 75 claim was based on the same allegations as its breach of fiduciary duty claim owed to the plan beneficiary under ERISA); <u>Nat'l Life Ins. Co. v. Kiser</u>, No. 5:09-CV-87-FL, 2010 WL 11622624, at *3 (E.D.N.C. Mar. 18, 2010) (holding claims were completely preempted by ERISA because they related to "management of Plan assets, the payment of Plan benefits, and the obligations of the Plan fiduciaries to administer the Plan in accordance with the governing Plan documents and in the interests of the Plan participants and beneficiaries").

In contrast, where claims alleged in a complaint arise out of a duty independent of any duty owed under an ERISA plan, federal case law consistently holds the claims are *not* preempted by ERISA. <u>E.g.</u>, <u>Pascack Valley Hosp. v. Local 464A UFCW Welfare Reimbursement Plan</u>, 388 F.3d 393 (3d Cir. 2004), <u>as amended</u> (Dec. 23, 2004); <u>Hansen v. Grp. Health Coop.</u>, 902 F.3d 1051, 1059—60 (9th Cir. 2018); <u>Lone Star OB/GYN Assocs. V. Aetna Health Inc.</u>, 579 F.3d 525, 529 (5th Cir. 2009) ("The crucial question is whether [plaintiff] is in fact seeking benefits under the terms of the plan, or rights that derive from the independent basis of the contract."); <u>Franciscan Skemp Healthcare, Inc. v. Cent. States Joint Bd. Health & Welfare Tr. Fund</u>, 538 F.2d 594, 597-98 (7th Cir. 2008) (holding that claims for negligent misrepresentation and estoppel derived "from duties imposed apart from ERISA and/or the plan terms").

In fact, in the recent decision in <u>Emergency Care Servs.</u>, UHC even acknowledged precedent holding that claims that arise independently under a state law are "not preempted by

ERISA because that statute created an independent duty under state law."[4]  There, UHC was citing New Jersey Carpenters & the Trustees Thereof v. Tishman Const. Corp. of New Jersey, 760 F.3d 297, 304 (3d Cir. 2014), where the court held that claims based on a New Jersey statute were not preempted by ERISA because the statute created an independent duty apart from any duty created by or enforceable under ERISA.  The court noted that the state statute's "independence is best understood by looking to [ ] what the plaintiffs must prove to prevail."  Id. If a plaintiff can prove a claim without the court having to assess an ERISA plan, then the statute creates an independent duty.  The Plaintiffs' claims here are based on a North Carolina statute which creates an independent duty under state law.  The Court does not need to assess an ERISA plan to determine UHC's liability under state law.

The North Carolina legislature enacted the Patient Protection Act for a purpose: to prevent insurers like UHC from unfairly penalizing patients who receive medical care from out-of-network providers.  It discourages UHC from doing exactly what it has done here: cutting Providence out of network as a negotiating tactic and harming patients as a result.  Plaintiffs are not seeking an interpretation of an ERISA plan, but are seeking to enforce North Carolina state law, and its protections related to payment rates.  Plaintiffs' claims are not an alternate enforcement mechanism to ERISA's civil enforcement provision, and are therefore not preempted.  See Darcangelo v. Verizon Commc'ns, Inc., 292 F.3d 181, 194 (4th Cir. 2002) (holding that claims "are not an attempt to enforce her rights under ERISA or the ERISA plan and therefore are not alternative enforcement mechanisms to § 502" and not preempted).

---

[4] See relevant portion of the UHC brief in opposition to the motion for remand in Emergency Care Servs. of Pennsylvania, P.C. v. UnitedHealth Grp., Inc., 515 F. Supp. 3d 298 (E.D. Pa. 2021)—page 19 n. 12—submitted as Exhibit 3.

Plaintiffs' claims are based only on North Carolina law. There will be no cause to consider ERISA in assessing Plaintiffs' claims. And even if Defendants may want to raise some defense under ERISA, that by itself is insufficient to confer subject matter jurisdiction over Plaintiffs' case. <u>Metro. Life Ins. Co. v. Taylor</u>, 481 U.S. 58, 63, 95 L. Ed. 2d 55 (1987) ("As a defense, it does not appear on the face of a well-pleaded complaint, and, therefore, does not authorize removal to federal court.")

## **<u>CONCLUSION</u>**

Under the allegations of the Complaint it is clear that the claims in this case arise under state law only and belong in state court. Plaintiffs have alleged that Defendants knowingly and intentionally violated North Carolina's Patient Protection Act by refusing to pay Patient Plaintiffs' and other class members' claims at a reasonable rate and thereby are penalizing them. This also violates North Carolina's Unfair or Deceptive Trade Practices Act. Accordingly, this court lacks subject matter jurisdiction over this case, and the case must be remanded to Mecklenburg County Superior Court.

Respectfully submitted, this the 29th day of October, 2021.

SMITH, ANDERSON, BLOUNT, DORSETT,
MITCHELL & JERNIGAN, LLP

By:    s/ J. Mitchell Armbruster
        J. Mitchell Armbruster
        North Carolina State Bar No.:  26422
        Robert W. Shaw
        North Carolina State Bar No.:  32923
        Grace A. Gregson
        North Carolina State Bar No.:  52159
        Post Office Box 2611
        Raleigh, North Carolina 27602-2611
        Telephone:  (919) 821-1220
        Facsimile:  (919) 821-6800
        marmbruster@smithlaw.com
        rshaw@smithlaw.com
        ggregson@smithlaw.com
        *Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I certify that on October 29, 2021, I electronically filed the foregoing **MEMORANDUM**

with the Clerk of Court, using the CM/ECF system which will send notification of such filing

will be sent electronically by the ECF system to Defendants' attorneys of record as follows:

Emily C. McGowan
Alston & Bird LLP
101 S. Tryon Street, Suite 4000
Charlotte, NC 28280
emily.mcgowan@alston.com

Matthew P. McGuire
Alston & Bird LLP
555 Fayetteville Street, Suite 600
Raleigh, NC 27601
matt.mcguire@alston.com

SMITH, ANDERSON, BLOUNT, DORSETT,
MITCHELL & JERNIGAN, LLP

By:    s/ J. Mitchell Armbruster
J. Mitchell Armbruster
North Carolina State Bar No.: 26422
Robert W. Shaw
North Carolina State Bar No.: 32923
Grace A. Gregson
North Carolina State Bar No.: 52159
Post Office Box 2611
Raleigh, North Carolina 27602-2611
Telephone: (919) 821-1220
Facsimile: (919) 821-6800
marmbruster@smithlaw.com
rshaw@smithlaw.com
ggregson@smithlaw.com
*Attorneys for Plaintiffs*