# EXHIBIT 2

515 F.Supp.3d 298
United States District Court, E.D. Pennsylvania.

EMERGENCY CARE SERVICES OF
PENNSYLVANIA, P.C. and Emergency Physician
Associates of Pennsylvania, P.C., Plaintiffs,
v.
UNITEDHEALTH GROUP, INC., UnitedHealthcare
Services, Inc., UnitedHealthcare, Inc.,
UnitedHealth Networks, Inc., UnitedHealthcare
Insurance Company, UnitedHealthcare of
New England, Inc., UnitedHealthcare of
Pennsylvania, Inc., and MultiPlan, Inc., Defendants.

No. 5:20-cv-05094
|
Filed 01/25/2021

**Synopsis**
**Background:** Professional emergency medical group practices that staffed hospital emergency departments and treated emergency room patients at Pennsylvania hospitals brought Pennsylvania state court action against health insurance companies that paid insurance claims generated by group practices' provision of medical services, and against company that provided data analysis services to insurance companies, for conversion, conspiracy, breach of implied contract, and quantum meruit, alleging that insurance companies, with help of data analysis company, had drastically reduced reimbursement they paid to group practices from historic, established rates. After insurance and data analysis companies removed action on asserted basis that Employee Retirement Income Security Act (ERISA) completely preempted claims, group practices moved for remand.

**Holdings:** The District Court, Joseph F. Leeson, Jr., J., held that:

group practices' claims could not have been brought directly under ERISA's civil enforcement mechanism, but

there was no basis for award of fees incurred as result of removal.

Motion granted.

**Procedural Posture(s):** Motion for Attorney's Fees; Motion for Costs; Motion for Judgment on the Pleadings; Motion for Remand.

**Attorneys and Law Firms**

 *301 David P. Heim, George Bochetto, John A. O'Connell, Bochetto & Lentz PC, Philadelphia, PA, Jonathan E. Siegelaub, Justin C. Fineberg, Lash Goldberg, FT Lauderdale, FL, for Plaintiffs.

Dimitri D. Portnoi, Jason A. Orr, O'Melveny & Myers LLP, Los Angeles, CA, K. Lee Blalack, II, O'Melveny & Myers, Washington, DC, Karl S. Myers, Stradley, Ronon, Stevens & Young, LLP, Philadelphia, PA, for Defendants UnitedHealth Group, Inc., UnitedHealthcare Services, Inc., UnitedHealthcare, Inc., UnitedHealth Networks, Inc., UnitedHealthcare Insurance Company, UnitedHealthcare Of New England, Inc., UnitedHealthcare Of Pennsylvania, Inc.

Errol J. King, Katherine C. Mannino, Phelps Dunbar LLP, Baton Rouge, LA, Barbara A. O'Connell, Sweeney & Sheehan, Philadelphia, PA, for Defendant Multiplan, Inc.

**OPINION**

**Plaintiffs' Motion to Remand, ECF No. 20—GRANTED**

Joseph F. Leeson, Jr., United States District Judge

 *302 **I. INTRODUCTION**
This action concerns a dispute over the rates of reimbursement paid by several health insurance companies to hospital-based physician practices in Pennsylvania. Plaintiffs, two hospital-based physician practices, contend that beginning in 2019 the insurance company Defendants, with the help of a data analysis company, drastically reduced their reimbursement from historic, established rates. Plaintiffs' suit asserts state law causes of action for conversion, conspiracy, breach of implied contract, and quantum meruit, and was initially filed in the Court of Common Pleas of Philadelphia County. Defendants removed the action to this Court on the grounds that Plaintiffs' claims are completely preempted by § 502(a) of the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1132 ("ERISA"). Presently before the Court is Plaintiffs' motion to remand the matter to Pennsylvania state court. They contend their claims properly sound in state law and are not

preempted by ERISA. Upon consideration of the arguments put forward by Plaintiffs in their motion, as well as by Defendants in opposition thereto, and for the reasons set forth below, Plaintiffs' motion to remand this matter to the Court of Common Pleas of Philadelphia County, is granted.

## II. BACKGROUND

### A. Facts Alleged in Plaintiffs' Complaint [1]

Plaintiffs are professional emergency medical group practices that staff hospital emergency departments and treat emergency room patients at thirteen Pennsylvania hospitals. Plaintiffs' Complaint ("Compl."), ECF No. 1-1, ¶ 26. The UnitedHealth Defendants ("United Defendants") are insurance companies that pay insurance claims generated by Plaintiffs' provision of medical services. *See id.* ¶¶ 14-21. Defendant Multiplan provides data analysis services to the United Defendants. *Id.* ¶ 22.

Pennsylvania and federal law, specifically the Emergency Medical Services System Act, 35 Pa. Cons. Stat. § 8101, *et seq.* ("EMSSA") and the Emergency Medical Treatment and Labor Act, 42 U.S.C. § 1395, *et seq.* ("EMTALA"), require emergency medical providers, including Plaintiffs, to provide treatment to patients who present themselves at hospitals without inquiry into the individuals' insurance status or ability to pay. Compl. ¶¶ 28-29. Plaintiffs aver that because they are required to provide emergency services without regard to insurance status, the law protects emergency service providers from predatory conduct by payors like the United Defendants. *Id.* ¶ 31. For the claims at issue in this case, Plaintiffs contend that they must be reimbursed "at a reasonable rate." *Id.* ¶ 33.

Plaintiffs state that the United Defendants are contractually and legally responsible for ensuring that their members can receive emergency medical services (a) **\*303** without obtaining prior approval and (b) without regard to the "in network" or "out-of-network" status of the emergency services provider. Compl. ¶ 37. The United Defendants highlight such coverage in marketing their insurance products, inducing members to purchase their products and rely upon those representations. *Id.* ¶ 38. Insurance companies such as the United Defendants typically demand a lower payment rate from contracted participating providers (also referred to as "in-network providers"). *Id.* ¶ 40. In return, insurance companies such as the United Defendants offer participating providers certain contractual benefits, including, for example, rate certainty, timeliness of payment, specified dispute resolution processes, and other benefits. *Id.* ¶ 41.

For all of the reimbursement claims at issue in this lawsuit, Plaintiffs were non-participating providers (also referred to as "out-of-network" providers), meaning they did not have an express written agreement with the United Defendants to accept or be bound by Defendants' reimbursement policies or in-network rates. Compl. ¶ 42. Specifically, these claims are (a) non-participating commercial claims (including for patients covered by Affordable Care Act Exchange products), (b) that were adjudicated as covered, and allowed as payable by Defendants, (c) at rates below the billed charges and a reasonable payment for the services rendered, and (d) as measured by the community where they were performed and by the person who provided them. *Id.* ¶ 43. Plaintiffs state that these claims do not involve coverage determinations under any health plan that may be subject to ERISA or claims for benefits based on assignment of benefits. *Id.* ¶ 45 n.1. The claims at issue in this lawsuit are brought by Plaintiffs in their own right and on their own behalf, and not on behalf of any patient. *Id.*

Plaintiffs claim that for many years, the United Defendants have allowed payment at 75-90% of billed charges for Plaintiffs notwithstanding the absence of a written agreement between the parties. Compl. ¶ 49. They state that this longstanding history establishes that a reasonable reimbursement rate for the non-participating claims at issue is 75-90% of Plaintiffs' billed charge. *Id.* ¶ 50. Moreover, Plaintiffs allege that through this historical course of dealing, Plaintiffs and the United Defendants have impliedly demonstrated their mutual assent to an agreement requiring the United Defendants to reimburse Plaintiffs at a rate of 75-90% of billed charges for emergency medical services rendered and requiring Plaintiffs to accept reimbursement at 75-90% of billed charges as payment in full. *Id.* ¶ 51. According to Plaintiffs, this course of behavior between the parties established "an enforceable, implied-in-fact contract." *Id.* However, and at the heart of this suit, Plaintiffs claim that beginning in January 2019, the United Defendants slashed their rate of reimbursement to Plaintiffs, conduct which Plaintiffs contend constitutes a breach of the established implied-in-fact contract between the parties. *Id.* ¶¶ 52-53. Plaintiffs further claim that the United Defendants have an extensive history of manipulating reimbursement rates to the detriment of patients and providers, which the Complaint sets forth in some detail. *See id.* ¶¶ 54-89.

WESTLAW © 2021 Thomson Reuters. No claim to original U.S. Government Works. 2

According to the Complaint, the United Defendants and Defendant MultiPlan, the United Defendants' data analyst, agreed to use false statements in the analysis and reports of the Data iSight tool, an analytical tool developed by MultiPlan, to achieve the reimbursement reduction discussed above. Compl. ¶ 90. Plaintiffs state that as a result of those activities, they have suffered millions of dollars in financial losses. *Id.* ¶ 92. Defendants purportedly concealed **\*304** their scheme by hiding behind written agreements and false statements. *Id.* ¶ 94. Plaintiffs state that since at least January 1, 2019, Defendants have falsely claimed to provide transparent, objective, and geographically-adjusted determinations of reimbursement rates through the use of the Data iSight tool. *Id.* ¶ 95. However, in reality, the Data iSight tool has been used to cover up and justify paying reimbursement to Plaintiffs that is far less than the reasonable payment rate that Plaintiffs have historically received. *Id.* ¶ 96.

As evidence of this alleged conspiracy, the Complaint avers as follows. Despite the Data iSight website's claim to offer "[t]ransparency for You, the Provider," and that the "website makes the process for determining appropriate payment transparent to [providers] ... so all parties involved in the billing and payment process have a clear understanding of how the reduction was calculated," Plaintiffs state that the Data iSight tool uses layers of obfuscation to hide and avoid providing the basis or method used to derive purportedly "appropriate" rates. Compl. ¶¶ 99-100. Plaintiffs further state that for claims whose reimbursement is purportedly determined by the Data iSight tool, non-participating providers (such as Plaintiffs) receive an Explanation of Benefit form ("EOB") from Defendants. *Id.* ¶¶ 102. Yet Defendants do not state, on the face of the EOBs, or anywhere else, any reason for the dramatic cuts in rates of reimbursement that non-participating providers are receiving. *Id.* ¶ 104. Instead, the EOBs contain a note to call a toll-free number for Data iSight if there are questions about the claim. *Id.* ¶ 105. Plaintiffs state that they contacted MultiPlan/Data iSight at that number to discuss two claims for the same procedure code, performed at the same facility, that had both been billed at $700, but for which the Data iSight tool allowed at only 42% and 59% of billed charges. *Id.* ¶ 106. After two weeks of attempting to contact Data iSight, a representative finally connected with Plaintiffs; however, she was unable to explain why the two claims for the same procedure at the same facility and billed at the same charge were reimbursed at different rates. *Id.* ¶ 107. Nor could she explain the reason for the dramatic cuts in reimbursement rates for the two procedures. *Id.* ¶ 108. When Plaintiffs continued to pursue the issue and spoke with a Data iSight supervisor, the supervisor responded that "it is just an amount that is recommended and sent over to United [Defendants]." *Id.* ¶ 111. Eventually, a member of Data iSight's Quality Control team offered to allow payment of both claims at 85% of their respective billed charges. *Id.* ¶ 118.

According to the Complaint, "transparency" is not the only false claim on the Data iSight website; Defendants also falsely claim on the Data iSight website that reimbursement rates are set in a "defensible, market tested" way. Compl. ¶¶ 120-21. Plaintiffs provide what they claim are several examples of reimbursements that indicate that there are no objective, market-tested criteria for reimbursement rates. *See id.* ¶¶ 128-30. They similarly state that Defendants, by way of the Data iSight tool, falsely claim that there are geographic adjustments to rates of reimbursement. *See id.* ¶¶ 134-36. The Complaint avers that contrary to those representations, claims from providers in different geographic locations show that Data iSight does not adjust for geographic differences but, instead, works as part of a scheme between Defendants to cut uniformly out-of-network provider reimbursements across geographic locations. *Id.* ¶ 137. Plaintiffs again provide what they claim are examples of the false nature of Data iSight's representations **\*305** regarding geographic adjustments.[2] *See id.* ¶¶ 138-45.

Based upon the above averments, Plaintiffs' Complaint asserts claims for common law conversion, civil conspiracy, breach of implied-in-fact contract, and quantum meruit, all under Pennsylvania law.

**B. Procedural Background**

Plaintiffs' Complaint is dated September 15, 2020, *see* ECF No. 1-1; Defendants removed the action to this Court on or about October 14, 2020, *see* ECF No. 1. On November 6, 2020, Plaintiffs filed their motion to remand the matter to state court. *See* ECF No. 20. On the same date, Plaintiffs filed a motion to stay the proceedings pending a decision on their motion to remand. *See* ECF No. 21. On November 13, 2020, the Court approved a stipulation between the parties setting deadlines for Defendants to file motions for judgment on the pleadings and to respond to Plaintiffs' motion to remand. *See* ECF No. 30. Pursuant to that stipulation, on November 20, 2020, a number of documents were filed: both of Defendants' motions for judgment on the pleadings, *see* ECF Nos 33, 36; MultiPlan's opposition to Plaintiffs'

motion to stay and Multiplan's motion for costs, *see* ECF Nos. 34-35; and the United Defendants' answer and counterclaim, and opposition to Plaintiffs' motion to stay, *see* ECF No. 37-38. On December 3, 2021, in response to correspondence from the parties, the Court stayed the remainder of briefing deadlines for all motions except Plaintiffs' motion to remand, *see* ECF No. 41, which the Court further clarified in an Order dated December 9, 2020, *see* ECF No. 43. The remainder of the briefing relative to Plaintiffs' motion to remand was completed between December 11, 2020, and December 29, 2020. *See* ECF Nos. 44-45, 48.

### III. LEGAL STANDARDS & APPLICABLE LAW

**A. The Law Governing Motions to Remand**

It is well established that the courts of the United States are courts of "limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.,* 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994). The original jurisdiction of a federal district court must be based on either diversity of citizenship as set forth in 28 U.S.C. § 1332(a), or federal question jurisdiction as set forth in 28 U.S.C. § 1331. *USAA Fed. Sav. Bank v. Belfi*, No. CV 19-3607, 2020 WL 5763585, at *2 (E.D. Pa. Sept. 28, 2020). "Removal from and remand to state court are governed by 28 U.S.C. §§ 1441, 1446, and 1447." *Bajrami v. Reliance Standard Life Ins. Co.*, 334 F. Supp. 3d 659, 661 (E.D. Pa. 2018). In particular, "Section 1441(a) of Title 28 provides that civil actions filed in a state court in which a federal district court would have original jurisdiction are removable by the defendant." *Belfi*, 2020 WL 5763585, at *2. "The propriety of removal thus depends on whether the case originally could have been filed in federal court." *City of Chi. v. Int'l Coll. of Surgeons*, 522 U.S. 156, 163, 118 S.Ct. 523, 139 L.Ed.2d 525 (1997). Pursuant to 28 U.S.C. § 1447(c), "[a]fter removal, a plaintiff may file a motion to remand based on either 'any defect' in removal procedure, or 'lack of subject matter jurisdiction.'" *Bajrami*, 334 F. Supp. 3d at 661-62.

**\*306** "When assessing a plaintiff's motion to remand, 'removal statutes are to be strictly construed against removal and all doubts should be resolved in favor of remand.'" *Belfi*, 2020 WL 5763585, at *2 (quoting *Abels v. State Farm Fire & Cas. Co.*, 770 F.2d 26, 29 (3d Cir. 1985)); *see Steel Valley Auth. v. Union Switch & Signal Div.*, 809 F.2d 1006, 1010 (3d Cir. 1987). The defendant has the burden of showing that an action has been properly removed. *Sikirica v. Nationwide Ins. Co.*, 416 F.3d 214, 219 (3d Cir. 2005); *Frederico v. Home Depot*, 507 F.3d 188, 193 (3d Cir. 2007) ("[T]he party asserting federal jurisdiction in a removal case bears the burden of showing, at all stages of the litigation, that the case is properly before the federal court."). "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case *shall* be remanded." 28 U.S.C. § 1447(c) (emphasis added).

**B. The Law Governing Preemption and ERISA**

"Although the well-pleaded complaint rule would ordinarily bar the removal of an action to federal court where federal jurisdiction is not presented on the face of the plaintiff's complaint, the action may be removed if it falls within the narrow class of cases to which the doctrine of 'complete pre-emption' applies." *Pascack Valley Hosp. v. Local 464A UFCW Welfare Reimbursement Plan*, 388 F.3d 393, 399 (3d Cir. 2004) (quoting *Aetna Health Inc. v. Davila,* 542 U.S. 200, 206, 124 S.Ct. 2488, 159 L.Ed.2d 312 (2004)), *as amended* (Dec. 23, 2004). "Complete preemption 'recognizes that Congress may so completely pre-empt a particular area that any civil complaint raising this select group of claims is necessarily federal in character.'" *N. Jersey Brain & Spine Ctr. v. United Healthcare Ins. Co.*, No. CV 18-15631, 2019 WL 6317390, at *2 (D.N.J. Nov. 25, 2019) (quoting *Pascack Valley Hosp.*, 388 F.3d at 399), *report and recommendation adopted*, No. 18-15631, 2019 WL 6721652 (D.N.J. Dec. 10, 2019).

"'ERISA's civil enforcement mechanism, § 502(a), is one of those provisions with such extraordinary pre-emptive power that it converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule, and permits removal.'" *N. Jersey Brain & Spine Ctr.*, 2019 WL 6317390, at *2 (quoting *N.J. Carpenters & the Trustees Thereof v. Tishman Constr. Corp. of N.J.*, 760 F.3d 297, 303 (3d Cir. 2014)). In determining wither ERISA's civil enforcement mechanism completely preempts an otherwise state-law claim, the Court applies the standard first set forth by the U.S. Supreme Court in *Aetna Health Inc. v. Davila*, 542 U.S. 200, 124 S.Ct. 2488, 159 L.Ed.2d 312 (2004), and further discussed by the Third Circuit in *Pascack Valley Hosp. v. Local 464A UFCW Welfare Reimbursement Plan*, 388 F.3d 393 (3d Cir. 2004): "a claim is completely preempted, and thus removable, under ERISA § 502(a) only if: (1) the plaintiff could have brought the claim under § 502(a);[3] *and* (2) no other independent legal duty supports the plaintiff's claim." **\*307** *New Jersey Carpenters*, 760 F.3d at 303 (emphasis in original) (citing *Pascack Valley Hosp.*, 388 F.3d at 400). "Because the test is conjunctive, a state-

law cause of action is completely preempted only if both of its prongs are satisfied." *Id.* (citing *Montefiore Med. Ctr. v. Teamsters Local 272,* 642 F.3d 321, 328 (2d Cir. 2011)).

## IV. DISCUSSION

### A. Whether Plaintiffs' claims could have been brought directly under § 502(a)

#### *1. The arguments of the parties*

Plaintiffs contend that the instant suit is unable to satisfy the first element of the *Davila/Pascack* test—that Plaintiffs could have brought their claims under § 502(a)—for two primary reasons: (1) claims premised on dispute over a *rate* of payment, as opposed to claims premised on a dispute over a *right* to payment, are not cognizable under ERISA; and (2) there is no ERISA standing here despite the existence of an assignment of rights/benefits. *See* Plaintiffs' Memorandum in Support of Their Motion ("Pls.' Mem."), ECF No. 20, at 9-13.

The United Defendants argue that the first element of the *Davila/Pascack* test is satisfied here because Plaintiffs have obtained assignments of benefits—*i.e.*, assignments of the benefit of payment/reimbursement under their patients' insurance plans—and as such they have standing to bring their claims under ERISA themselves. *See* United Defendants' Memorandum in Opposition ("United Opp'n."), ECF No. 45, at 8-10. As to the rate-of-payment/right-to-payment distinction, the United Defendants contest that this is only a "right" to payment case: "it is factually disputed whether the [ ] Plaintiffs were entitled to *any* payment from th[e] health benefit plans." *Id.* at 11 (emphasis in original). In particular, the United Defendants contend that to adjudicate their counterclaims as well as Plaintiffs' claims, the Court must determine (i) whether Plaintiffs provided medical care and (ii) whether that care is covered under a benefits plan —a determination the United Defendants argue cannot be made without reference to the ERISA-covered benefits plans. *See id.* But even if this was truly a "rate" of payment case, the United Defendants argue the rate-of-payment/right-to-payment distinction is inapplicable, because the Third Circuit has only applied this distinction where the benefits at issue were the result of something other than an ERISA-defined benefits plan, such as an express written contract or statute. *See id.* at 12.

MultiPlan, similar to the United Defendants, argues that because Plaintiffs "routinely" obtain assignments of benefits, they could have brought their claims under ERISA pursuant to such assignments, and it is of no moment that they "strategically" chose not to do so. *See* MultiPlan's Memorandum in Opposition ("MultiPlan Opp'n."), ECF No. 44, at 7-8. MultiPlan further states—again similar to the United Defendants—that the rate-of-payment/right-to-payment distinction is not applicable here, because the Third Circuit has only applied this distinction in cases where there existed an "express written participation agreement," which Plaintiffs admit they do not have with Defendants. *Id.* at 12-13.

#### *2. Plaintiffs' claims could not have been brought directly under § 502(a)*

Beginning with the rate-of-payment/right-to-payment distinction, and whether this distinction is of any import in determining whether Plaintiffs' claims are colorable under ERISA (this being the part of the inquiry within the first step of **\*308** the *Davila/Pascack* test, *see Progressive Spine & Orthopaedics, LLC,* 2017 WL 4011203, at \*5), the Court finds that Plaintiffs have the stronger argument.

At the outset, that the United Defendants' "factually dispute[ ] whether the [ ] Plaintiffs were entitled to *any* payment from th[e] health benefit plans," United Opp'n. at 11 (emphasis in original), is (1) facially implausible, because (a) it is uncontested that the United Defendants *have in fact already paid* the at-issue claims, and (b) there is *no* indication on what basis the United Defendants are asserting or can assert that these claims were incorrectly paid; and, more importantly, (2) of no import, because in adjudicating Plaintiffs' motion, the Court assumes the truth of the Complaint's factual allegations and draws all reasonable inferences in Plaintiffs' favor. *See Steel Valley Auth.,* 809 F.2d at 1010; *see also* Compl. ¶ 42 ("[T]he Non-Participating Claims are (a) non-participating commercial claims ... that were adjudicated as covered, and allowed as payable by Defendants ...."); ¶ 46 ("This Complaint concerns only the appropriate rates of payment on the Non-Participating Claims, not whether a right to receive payment exists.").

Having established that this action is basically a dispute over the rate of payment of claims, there can be little doubt that Plaintiffs' causes of action are not colorable under ERISA. This is true notwithstanding the absence of an express agreement between Plaintiffs and the United Defendants.[4]

Both of these points are illustrated in *N. Jersey Brain & Spine Ctr. v. United Healthcare Ins. Co.*, No. CV 18-15631, 2019 WL 6317390, (D.N.J. Nov. 25, 2019), *report and recommendation adopted*, No. 18-15631, 2019 WL 6721652 (D.N.J. Dec. 10, 2019), a case directly on point. In *N. Jersey Brain & Spine Ctr.*, plaintiff, a medical practice, alleged that at all relevant times "it was an out-of-network healthcare provider that provided emergency and pre-approved medically necessary services to 27 patients covered by healthcare plans sponsored, funded, operated, controlled, and/or administered by defendants," health insurance companies. *Id.* at *1. Plaintiff alleged it had engaged in a course of dealing with defendants for a certain reimbursement rate that established an implied contract, a contract that was breached when defendants failed to remit reimbursement at the proper rate. *Id.* Plaintiff consequently asserted state law claims for breach of implied contract, breach of the covenant of good faith and fair dealing, unjust enrichment, and quantum meruit, among others. *Id.* On the issue of whether plaintiff's claims were colorable claims for benefits under ERISA, the court stated as follows:

> [Plaintiff's] claims are not colorable claims for benefits under § 502(a). Section 502(a) empowers a participant or beneficiary to sue "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). Where a plaintiff "does not challenge the type, scope or provision of benefits under [an ERISA] healthcare plan," any "[d]isputes over the amount of reimbursement are not preempted by ERISA." *East Coast Advanced Plastic Surgery v. AmeriHealth*, Civ. A. No. 17-8409, 2018 WL 1226104, at *3 (D.N.J. Mar. 9, 2018); *see also* **\*309** *Thomas R. Peterson, M.D. PC v. Cigna Health & Life Ins. Co.*, Civ. A. No. 18-4764, 2018 WL 3586273, at *4 (D.N.J. July 25, 2018) ("ERISA does not pre-empt disputes over the amount of reimbursement."); *Emergency Physicians of St. Clare's v. United Health Care*, Civ. A. No. 14-404, 2014 WL 7404563, at *5 (D.N.J. Dec. 29, 2014) ("ERISA does not, however, preempt claims over the *amount* of coverage provided, which includes disputes over reimbursement.").

> Here, plaintiff's claims are related to the amount of payment received, premised on implied agreements and representations that allegedly arose in the course of dealings between the parties, and not claims seeking coverage under a given health plan. *See* Am. Compl. ¶ 41 ("There is no dispute that defendants' plan provides coverage for the patients and claims ... as defendants already issued partial payments."). The fact that defendants sent [plaintiff] provider remittances which reference the terms of certain patients' ERISA plans to explain their adjudication of the claims does not change the Court's analysis. Indeed, this Court has considered substantially similar allegations as those in the amended complaint and found that substantially similar breach of implied contract, breach of the covenant of good faith and fair dealing, unjust enrichment and *quantum meruit*, promissory estoppel, negligent misrepresentation, tortious interference with economic advantage, and New Jersey statutory claims are not colorable claims for benefits under an ERISA plan. *See MHA, LLC v. Empire Healthchoice HMO, Inc.*, No. CV 17-6391, 2018 WL 549641, at *3 (D.N.J. Jan. 25, 2018) (finding claims by out-of-network healthcare provider "are not the type permissible under Section 502(a) because "MHA does not challenge the type, scope or provision of benefits under Defendants' healthcare plans. Rather, it seeks to assert rights as a third-party provider for payment"); *N. Jersey Brain & Spine Ctr. v. Aetna Life Ins. Co.*, No. CV 16-1544, 2017 WL 659012, at *4 (D.N.J. Feb. 17, 2017) ("Plaintiff does not contend that it is due additional monies under the patients' ERISA plans. Quite to the contrary, Plaintiff alleges that it is owed monies based on its alleged contract with Aetna, separate and apart from the plan. Thus, Plaintiff is not suing Aetna based on any purported assignments from the patients of their rights under ERISA, but NJBSC's alleged rights under an independent contract with Aetna."), *report and recommendation adopted*, No. 2:16-CV-01544, 2017 WL 1055957 (D.N.J. Mar. 20, 2017).

*Id.* at *5 (emphasis in original).

The Court agrees with the reasoning of *N. Jersey Brain & Spine Ctr.* and the many cases on which it relies. Under this reasoning, it is clear that Plaintiffs here do "not challenge the type, scope or provision of benefits under" an ERISA plan; rather, they "dispute the amount of reimbursement" pursuant to an allegedly enforceable contract implied-in-fact which arose out of an established course of dealing. *Id.* at *5 (citations omitted). As such, adjudication of Plaintiffs' claims will not require reference to or construction of an ERISA benefits plan, and these claims are "not preempted by ERISA." [5] *Id.* What is more, as **\*310** *N. Jersey Brain & Spine Ctr.* makes clear, this conclusion is not altered by the absence of an express agreement between Plaintiffs and the United Defendants. *See id.*; *see also E. Coast Advanced Plastic Surgery v. Horizon Blue Cross Blue Shield*

*of New Jersey*, No. CV 18-7718, 2018 WL 6185544, at *5 (D.N.J. Sept. 17, 2018) ("[Plaintiff] argues that its claims are based on an implied-in-fact contract that was created based on its dealings with [defendant] .... The Third Circuit has distinguished disputes related to the amount to be reimbursed from disputes related to the right to reimbursement. In *Pascack Valley Hospital*, the Third Circuit held that ERISA does not preempt disputes regarding the amount of payment made to a provider. 388 F.3d 393, 403-04 (3d Cir. 2004).... For purposes of the motion to remand, the Court is satisfied that interpretation of the Plan is not necessary to adjudicate [plaintiff's] underpayment claims, and that they are not colorable claims under § 502(a)."), *report and recommendation adopted*, No. CV 18-7718, 2018 WL 6178869 (D.N.J. Nov. 26, 2018).

Turning to the second inquiry within the first step of the *Davila/Pascack* test—whether the assignments of benefits which Plaintiffs received from their patients confer upon Plaintiffs ERISA standing—Plaintiffs here too have the stronger argument. "[R]egardless of whether there is one valid assignment at issue or more, plaintiff[s] explicitly plead[ ] 'direct claims and causes of action that are not predicated on an assignment of benefits from the patient,' and 'the mere existence of an assignment does not convert [plaintiffs'] state law claim for breach of contract into a [derivative] claim to recover benefits under the terms of an ERISA plan.' " *N. Jersey Brain & Spine Ctr.*, 2019 WL 6317390, at *5 (quoting *North Jersey Brain & Spine Ctr.*, 2017 WL 659012, at *4, and citing *MHA, LLC*, 2018 WL 549641, at *3 n.3). As a consequence, Plaintiffs do not have standing to assert their claims under ERISA.

Because the Court has determined that (i) Plaintiffs' claims are not the types of claims that are colorable under ERISA and (ii) Plaintiffs lack standing to assert their claims under ERISA, Plaintiffs could not have brought their claims directly under § 502(a). As such, the first element of the *Davila/Pascack* test has not been satisfied. Plaintiffs' claims are therefore not completely preempted by § 502(a), and the Court need not determine whether the second element of the *Davila/Pascack* test has been satisfied. Plaintiffs' motion to remand to state court is granted.[6]

**B. There is no basis for an award of fees**

Plaintiffs contend that Defendants' removal of this action was objectively unreasonable, and as such Plaintiffs seek an award of fees. *See* Pls.' Mem. at 15-16. Title 28 U.S.C. § 1447(c) provides that "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." "[A] district court has broad discretion and may be flexible in determining whether to require the payment of fees under section 1447(c)." *Mints v. Educ. Testing Serv.*, 99 F.3d 1253, 1260 (3d Cir. 1996).

**\*311** Despite being ultimately unsuccessful and contrary to the reasoning and holdings of a number of cases from within this Circuit, the Court cannot say that Defendants' arguments in support of removal were made in bad faith or objectively unreasonable. As such, the Court declines to award Plaintiffs fees.

**V. CONCLUSION**

For the reasons set forth above, Plaintiffs' motion to remand this action to the Pennsylvania Court of Common Pleas, Philadelphia County, is granted.

A separate Order follows this Opinion.

**O R D E R**

**AND NOW**, this 25th day of January, 2021, upon consideration of Plaintiffs' motion to remand this matter to the Court of Common Pleas of Philadelphia County, *see* ECF No. 20, and for the reasons set forth in the Opinion issued this date, **IT IS HEREBY ORDERED AS FOLLOWS**:

1. Plaintiffs' motion to remand, ECF No. 20, is **GRANTED**; this matter is hereby **REMANDED** to the Pennsylvania Court of Common Pleas, Philadelphia County.

2. Defendants' motions for judgment on the pleadings, ECF Nos. 33, 36, as well as the United Defendants' motion for fees and costs, ECF No. 35, are **DISMISSED as moot** in light of the absence of subject matter jurisdiction.

3. This case is **CLOSED.**

BY THE COURT:

*/s/ Joseph F. Leeson, Jr.*_____

JOSEPH F. LEESON, JR.

**All Citations**

515 F.Supp.3d 298

## Footnotes

1     For purposes of Plaintiffs' motion, the Court assumes the truth of the Complaint's factual allegations and draws reasonable inferences in Plaintiffs' favor. *See* Steel Valley Auth. v. Union Switch & Signal Div., 809 F.2d 1006, 1010 (3d Cir. 1987). The Court here includes certain legal conclusions as stated in the Complaint for purposes of clarity where it would not otherwise do so.

2     Plaintiffs also claim that in 2018 Defendants entered into agreements with each other that are consistent with agreements entered into by MultiPlan and other insurance providers, which constitutes further evidence of Defendants' conspiracy. *See* Compl. ¶¶ 146-57.

3     The first element of the test is often further broken down by courts into two sub-inquiries: "Whether the plaintiff is the *type* of party that can bring a claim pursuant to Section 502(a)(1)(B), and [ ] whether the *actual claim* that the plaintiff asserts can be construed as a colorable claim for benefits pursuant to Section 502(a)(1)(B)." Progressive Spine & Orthopaedics, LLC v. Anthem Blue Cross Blue Shield, No. CV 17-536, 2017 WL 4011203, at *5 (D.N.J. Sept. 11, 2017) (emphasis in original). The Court's analysis below treats first the second sub-inquiry (whether a claim is colorable under ERISA), followed by treatment of whether Plaintiffs' assignments of benefits confer standing under ERISA.

4     Indeed, Defendants' provide little in the way of support for their conclusion that the absence of an express agreement negates the applicability of the distinction between rate-of-payment disputes and right-to-payment disputes.

5     *Compare* MedWell, LLC v. Cigna Corp., No. CV 20-10627, 2020 WL 7090745, at *4 (D.N.J. Dec. 4, 2020) (finding claims colorable under ERISA where the case was "a 'right to payment' case," and "[Plaintiff], on behalf of patients/beneficiaries, [sought] payment from [defendant] because [defendant] [ ] failed to pay altogether, even though it [was] obliged to under th[e] plans"); Shore v. Indep. Blue Cross & Indep. Health Grp., No. CV 16-5224, 2016 WL 6821944, at *2 (E.D. Pa. Nov. 18, 2016) (finding plaintiff's claims colorable under ERISA where they arose out of an improper denial of claims under an ERISA-qualified health plan).

6     Additionally, the Court finds no basis for the parties to engage in jurisdictional discovery as requested. *See* United's Opp'n. at 18.

**End of Document**     © 2021 Thomson Reuters. No claim to original U.S. Government Works.