IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL ACTION NO. 3:21-CV-517-MOC-DCK

| | |
|---|---|
| CYNTHIA PUSEY VIGDOR, RONALD EASTER, ROBERT VIGDOR, VANESSA KROMBEEN, VASHISTA KOKKIRALA, RICHARD SMITHSON, JESSICA HUCK, and PROVIDENCE ANESTHESIOLOGY ASSOCIATES, P.A., <br><br>**Plaintiffs,** <br><br>v. <br><br>UNITEDHEALTHCARE INSURANCE COMPANY, UNITEDHEALTHCARE OF NORTH CAROLINA, INC., UNITEDHEALTH GROUP INC., and UMR, INC., <br><br>**Defendants.** | **MEMORANDUM AND RECOMMENDATION** |

**THIS MATTER IS BEFORE THE COURT** on Plaintiffs' "Motion To Remand" (Document No. 19). This motion has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. §636(b), and is now ripe for disposition. Having carefully considered the arguments, the record, and applicable authority, the undersigned will respectfully recommend that the motion be granted.

**I. PROCEDURAL BACKGROUND**

Cynthia Pusey Vigdor, Robert Vigdor, Vanessa Krombeen, Vashista Kokkirala, Jessica Huck, Richard Smithson, and Ronald Easter (together, "Patient Plaintiffs"), and Providence Anesthesiology Associates, P.A. ("Providence") (collectively "Plaintiffs"), initiated this action with the filing of a "Class Action Complaint" (Document No. 1-2) (the "Complaint") on August 16, 2021, in the Superior Court of Mecklenburg County, North Carolina, Case No. 2021 CVS

13028.  The Complaint alleges that UnitedHealthcare Insurance Company, UnitedHealthcare of North Carolina, Inc., UMR, Inc., and UnitedHealth Group, Inc. (together "Defendants" or "UHC") violated the North Carolina Patient Protection Act, N.C. Gen. Stat. § 58-3-200(d).  (Document No. 1-2, p. 2).  Plaintiffs assert claims for:  (1) unfair and deceptive trade practices, pursuant to N.C. Gen. Stat. § 75-1.1;  and (2) breach(es) of contract.  (Document No. 1-2, pp. 24-27).

"Defendants' Notice Of Removal Of Civil Action" (Document No. 1) was filed on September 29, 2021.  Defendants assert that this action is removable to this Court under 28 U.S.C. § 1331 because the alleged claims "arise under and are completely preempted by the Employment Retirement Income Security Act of 1974, as amended, 29 U.S.C. §§ 1001, et seq. ("ERISA")."  (Document No. 1, p. 1).  Defendants further assert that federal district courts have original jurisdiction over completely preempted claims and that venue is appropriate here since the lawsuit was removed from the Superior Court in Mecklenburg County, North Carolina.  (Document No. 1, pp. 3-5) (citing 29 U.S.C. §§ 113(e)(1) and (f);  28 U.S.C. § 1331;  and 28 U.S.C. §§ 113(c), 1391, 1441(a) and 1446(a)).

Soon after asserting that jurisdiction and venue are appropriate here, Defendants filed their "…Motion To Dismiss" on October 20, 2021, seeking to "dismiss the Complaint in its entirety with prejudice."  (Document No. 10).  "Defendants' Motion To Dismiss" contends that there is not personal jurisdiction as to two UHC Defendants;  that Plaintiff Providence should be compelled to arbitration;  and that all the claims should be dismissed pursuant to Fed.R.Civ.P. 12(b)(6).  Id.

On October 29, 2021, Plaintiffs filed a "Motion To Remand" (Document No. 19) and a "…Memorandum In Support Of Motion For Remand" (Document No. 20).  Plaintiffs contend that this matter only alleges state law claims, and therefore, this Court lacks subject matter jurisdiction. (Document No. 19).

The pending "Motion To Remand" has been fully briefed and is ripe for review and a recommended disposition to the Honorable Max O. Cogburn, Jr.

## II. STANDARD OF REVIEW

Subject-matter jurisdiction "is a threshold issue," and district courts must consider the issue of jurisdiction "before addressing the merits" of a claim. Jones v. Am. Postal Workers Union, 192 F.3d 417, 422 (4th Cir. 1999) (citing Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94 (1998)). "Subject-matter jurisdiction cannot be forfeited or waived and should be considered when fairly in doubt." Ashcroft v. Iqbal, 556 U.S. 662, 671 (2009). Indeed, district courts "have an independent obligation to determine whether subject-matter jurisdiction exists, even when no party challenges it." Hertz Corp. v. Friend, 559 U.S. 77, 94 (2010); see also Wisconsin Dep't of Corrections v. Schacht, 524 U.S. 381, 382 (1998).

The "burden of proving subject matter jurisdiction" lies with the party asserting that federal jurisdiction exists – that is, "the party seeking removal." Richmond, Fredericksburg & Potomac R. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991); and Mulcahey v. Columbia Organic Chems. Co., Inc., 29 F.3d 148, 151 (4th Cir. 1994). A defendant can remove "any civil action brought in a State court of which the district courts of the United States have original jurisdiction…to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a); see also Dixon v. Coburg Dairy, Inc., 369 F.3d 811, 816 (4th Cir. 2004); and Rose v. SLM Fin. Corp., 2007 WL 674319, at *1 (W.D.N.C. Feb. 28, 2007) ("[a] defendant is entitled to remove a case brought in state court to federal court if the plaintiff could have brought it in federal court originally as a civil action 'arising under' federal laws" (quoting Grable & Sons Metal Prods, Inc. v. Darue Eng'g & Manuf., 545 U.S. 308, 312 (2005))).

"To determine whether a plaintiff's claims 'arise under' the laws of the United States, courts typically use the 'well-pleaded complaint rule,' which focuses on the allegations of the complaint." Prince v. Sears Holdings Corp., 848 F.3d 173, 177 (4th Cir. 2017) (quoting Aetna Health Inc. v. Davila, 542 U.S. 200, 207 (2004)).

> An exception to the well-pleaded complaint rule occurs when a federal statute completely preempts state law causes of action. *Id.* at 207–08, 124 S.Ct. 2488. "[C]omplete preemption 'converts an ordinary state common law complaint into one stating a federal claim.'" *Darcangelo v. Verizon Commc'ns, Inc.*, 292 F.3d 181, 187 (4th Cir. 2002) (quoting *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 65, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987)). "[W]hen complete preemption exists, 'the plaintiff simply has brought a mislabeled federal claim, which may be asserted under some federal statute.'" *Sonoco*, 338 F.3d at 371 (quoting *King v. Marriott Int'l, Inc.*, 337 F.3d 421, 425 (4th Cir. 2003)). Defendants may remove preempted state law claims to federal court, regardless of the "label" that the plaintiff has used. *See id.*; *Griggs v. E.I. DuPont de Nemours & Co.*, 237 F.3d 371, 379 (4th Cir. 2001).

Id.

ERISA's civil enforcement provision "has the potential to preempt state law causes of action" and "allows a participant or beneficiary of an ERISA plan to bring a civil action 'to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan[,] ... to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or ... to obtain ... equitable relief.'" Prince, 848 F.3d at 177 (quoting 29 U.S.C. § 1132(a)(1)(B) ("Section 502(a)")).

To determine whether there is complete preemption under Section 502(a), the Fourth Circuit applies a three-part test:

> (1) the plaintiff must have standing under § 502(a) to pursue its claim; (2) its claim must "fall[ ] within the scope of an ERISA provision that [it] can enforce via § 502(a)"; and (3) the claim must not be capable of resolution "without an interpretation of the contract governed by federal law," i.e., an ERISA-governed employee benefit plan.

Prince, 848 F.3d at 177 (4th Cir. 2017) (quoting Sonoco, 338 F.3d at 372 (4th Cir. 2003)).

## III. DISCUSSION

### A. Factual Background

According to the Complaint, Patient Plaintiffs "are residents of North Carolina who have or have had health insurance provided by and through UHC." (Document No. 1-2, p. 3). Patient Plaintiffs received medical care from Providence, "an anesthesia provider and longtime member of UHC's network, but who was forced out of UHC's network in 2020." Id.

Plaintiffs allege that "UHC unilaterally terminated its network relationship with Providence, and demanded that Providence cut its rates by more than 60% to return to the network." Id. Plaintiffs further allege that "UHC has refused to reimburse Plaintiffs and class members at the reasonable, standard rate for medical services performed for these providers, [and] [a]s a result, UHC's insured members are forced to bear medical costs that should be borne by UHC." Id.

Based on the foregoing, Plaintiffs contend that "UHC has violated the North Carolina Patient Protection Act, N.C. Gen. Stat. § 58-3-200(d)" (the "Patient Protection Act") and the Unfair or Deceptive Trade Practices Act, N.C. Gen. Stat. § 75-1.1 *et seq*. ("UDTPA"). (Document No. 1-2, pp. 2, 24-25). Plaintiffs further contend that under the Patient Protection Act "insurers are **prohibited** from 'penaliz[ing] an insured or subject[ing] an insured to the out-of-network benefit levels offered under the insured's approved health benefit plan' when they have an insufficient network." (Document No. 1-2, p. 3) (quoting N.C.Gen.Stat. § 58-3-200(d)). Plaintiffs seek reimbursement from UHC "for the out-of-network medical expenses it has artificially created through its targeted network terminations" and "treble damages and attorneys' fees." (Document No. 1-2, pp. 4, 27).

**B. Argument**

Plaintiffs present two primary arguments in support of remand: (1) Plaintiffs' claims are "rate of payment" claims, not "right of payment" claims, and therefore, are not preempted by ERISA; and (2) Plaintiffs' claims arise solely out of North Carolina statutory and common law. (Document No. 20, pp. 1, 13-20).

Plaintiffs argue that their claims are based on Defendants' "unfair *rate of payment*" and are "entirely based on North Carolina state laws relating to the 'rate of payment' owed by an insurance company for medical services." (Document No. 20, pp. 6, 13). Plaintiffs do not dispute that their underlying medical claims were reimbursed, but assert, as noted above, that they were reimbursed by Defendants at reduced, unreasonable rates that violated the North Carolina Patient Protection Act and the UDTPA. (Document No. 20, p. 9).

Plaintiffs acknowledge that ERISA § 502(a) provides "plan participants and beneficiaries the right to sue to force disclosure of certain information, to recover benefits due under the plan, to clarify the right to future benefits, or to enforce rights under ERISA or the plan." (Document No. 20, p. 11). However, Plaintiffs contend that "[r]ate of payment claims do not fall under § 502(a) and are not preempted." Id. (quoting Brown v. Blue Cross Blue Shield of Tenn., Inc., 827 F.3d 543, 548 (6th Cir. 2016) and citing Lone Star OB/GYN Assocs. v. Aetna Health Inc., 579 F.3d 525, 530–532 (5th Cir. 2009)). This includes rate of payment claims brought by out-of-network providers and patients. Id. (citing Gulf-to-Bay Anesthesiology Assocs. v. UnitedHealthCare of Fla., Inc., 2018 WL 3640405, at *3 (M.D.Fla. July 20, 2018) (remanding rate-of-payment dispute between out-of-network anesthesiology provider and UnitedHealthCare of Florida)); see also Emergency Care Servs. Of Pennsylvania, P.C. v. UnitedHealth Grp., Inc., 515 F.Supp.3d 298 (E.D.Pa. 2021). Plaintiffs note that multiple circuits "have consistently held

that 'rate of payment' claims do not fall under ERISA's enforcement provision § 502(a) and are therefore not completely preempted." (Document No. 20, p. 13) (citations omitted).

Plaintiffs assert that this case is analogous to Emergency Care Servs. Of Pennsylvania, P.C. v. UnitedHealth Grp., Inc., where the plaintiff out-of-network healthcare providers "alleged that UHC paid a portion of the at-issue claims but engaged in an unlawful course of dealing resulting in the claims being systematically paid at a drastically reduced rate." (Document No. 20, p. 16). In Emergency Care Servs., the U.S. District Court for the Eastern District of Pennsylvania "held that the plaintiffs' rate of payment claims were not preempted by ERISA, and remanded the claims to state court." Id. (citing Emergency Care Servs., 515 F.Supp.3d at 310-311).

Similarly, in Gulf-to-Bay Anesthesiology Assocs. v. UnitedHealthCare of Fla., Inc., before the Middle District of Florida, "UHC lost on this same issue." (Document No. 20, p. 16) (citing Gulf-to-Bay, 2018 WL 3640405, at *1). According to Plaintiffs, the U.S. District Court in Florida held that the provider's claims brought "under Florida statutory and common law for underpayment for medically necessary anesthesiology services" were "rate of payment claims" and not preempted by ERISA. Id. (citing Gulf-to-Bay, 2018 WL 3640405, at *1-2).

Plaintiffs contend that in this case, like the Pennsylvania and Florida cases, where "UHC paid a portion, but not the full amount, of the claims," "the dispute with UHC is not over the right to payment, but to the rate of payment." (Document No. 20, p. 16).

In response, Defendants assert that numerous cases in the Fourth Circuit have found "that UDTPA and state breach of contract claims are preempted." (Document No. 27, p. 17) (citing Wilmington Shipping Co. v. New Eng. Life Ins. Co., 496 F.3d 326, 342–43 (4th Cir. 2007); DeBerry v. Reliance Standard Life Ins. Co., No. 3:11-CV-044-DLH-GCM, 2011 WL 2604781, at *2–3 (W.D.N.C. May 10, 2011); Smith v. Jefferson Pilot Fin. Ins. Co., 367 F.Supp.2d 839, 842

(M.D.N.C. 2005); and Ward v. Cigna Life Ins. Co. of N.Y., No. 1:09-CV-455-MR, 776 F.Supp.2d 155, 159 (W.D.N.C. 2011)). Defendants contend that "[u]nderpayment claims are quintessential ERISA § 502(a)(1)(B) claims." Id. (citations omitted).

Defendants go on to assert that there is "a critical distinction" between this case and the "rate of payment" cases relied upon by Plaintiffs. (Document No. 27, p. 18). According to Defendants, "the 'rate of payment' inquiry generally applies when the provider-plaintiff does not have direct standing to sue under ERISA and the court must determine the scope of the provider-plaintiff's standing, if any." Id. Defendants explain that "'[r]ate of payment' disputes most commonly arise in situations involving network contracts between providers and insurers or state statutes that expressly grant providers a private right of action to collect specific rates." Id. (citing Lone Star OB/GYN Assocs., 579 F.3d at 530; and Gulf-to-Bay Anesthesiology Assocs., 2018 WL 3640405, at *3).

Defendants further contend that "[b]ecause Patient Plaintiffs have direct statutory standing to sue United under ERISA as participants themselves, the 'rate of payment inquiry' is not applicable to the Patient Plaintiffs' claims." Id. And, in addition, Defendants argue that the "rate of payment" inquiry does not "apply to Providence's claims, because Providence has alleged derivative standing through Patient Plaintiffs' assignment of benefits." Id.

> Put another way, an in-network provider may bring state law claims against an insurer, without ERISA preemption, as long as the only dispute involves the "rate of payment" that the provider is entitled to receive under the provider's contract with the insurer and the resolution of that dispute will not require interpretation of an ERISA plan document. *See Conn. State Dental Ass'n v. Anthem Health Plans, Inc.*, 591 F.3d 1337, 1350 (11th Cir. 2009). But "[c]laims for [ERISA plan] benefits by healthcare providers pursuant to an assignment are . . . within the scope of § 502(a)." *Id.* at 1347.

(Document No. 27, p. 19).

Defendants also suggest that the vast majority of "rate of payment" cases relied on by Plaintiffs involve in-network providers challenging rates under a direct provider agreement with an insurer. (Document No. 27, p. 21). Defendants contend that those cases are not applicable here as "all of the claims at issue here arose after Providence was out-of-network, when there was no applicable provider agreement." Id.

Finally, Defendants argue that "Patient Plaintiffs' ERISA-governed benefit plans direct how the plan handles out-of-network services received at in-network facilities." (Document No. 27, p. 25). "For example, the Patient Plaintiffs' Certificate of Coverage 'Allowed Amounts' provisions contain guidance on how the plan determines out-of-network allowed amounts depending on whether those amounts are negotiated or not, and set out a methodology for determining allowed amounts at in-network facilities…." Id. Defendants conclude that a determination of the issues in this case will require analysis of Patient Plaintiffs' plan terms, alongside other materials related to their claims, and depend on, "consultation with and interpretation of the [ERISA] Plans." (Document No. 27, pp. 25-26) (quoting Sadeghi v. Aetna Life Ins. Co., 564 F.Supp.3d 429, 472 (M.D. La. 2021)).

In reply, Plaintiffs note that both sides cite to Lone Star OB/GYN Assocs. v. Aetna Health Inc., 579 F.3d 525, 530 (5th Cir. 2009). Plaintiffs contend that the question in Lone Star – "whether the applicable contractual rate for services created a legal duty independent of ERISA" – is similar to the question in this case regarding application of the North Carolina Patient Protection Act ("PPA"). (Document No. 32, p. 8). According to Plaintiffs, both the provider agreement in Lone Star and the PPA require "fair and equitable reimbursement of medically necessary services." Id. However, the determination of fair reimbursement in this case, as in Lone Star, does "not require examination of an ERISA plan." Id.

9

Plaintiffs assert that "[w]hether a claim is a 'rate of payment' or 'right of payment' claim depends on the relief sought." (Document No. 32, p. 9). Plaintiffs contend that Aetna Health Inc. v. Davila, 542 U.S. 200 (2004) is a "good example of this reasoning in action." Id. The claims in Davila were "preempted because they were 'right to payment' claims, asking whether certain procedures were or should have been covered under the terms of the ERISA plan." Id. (citing Davila, 542 U.S. at 210).

> "It follows that if an individual brings suit complaining of a denial of coverage for medical care, where the individual is entitled to such coverage only because of the terms of an ERISA-regulated employee benefit plan, **and where no legal duty (state or federal) independent of ERISA or the plan terms is violated**, then the suit falls "within the scope of" ERISA § 502(a)(1)(B)." Davila, 542 U.S. at 210 (emphasis added).
> By contrast, where the only issue is the proper rate of payment for covered claims, those claims are not preempted. Lone Star, 579 F.3d at 532. The Texas statute under which the Lone Star plaintiffs sought relief "only overlaps with the ERISA enforcement scheme if there is a dispute over whether a claim is 'payable'—whether there has been a denial of benefits because there is a lack of coverage." Id.

(Document No. 32, pp. 9-10).

Plaintiffs argue that "[b]y doing business in North Carolina, UHC must adhere to North Carolina statutes, including the Patient Protection Act, which creates a duty independent of ERISA." (Document No. 32, p. 10). Plaintiffs argue that UHC made some payments to Plaintiffs, "but not the amounts to which [they] are entitled under North Carolina law." (Document No. 32, p. 12). Plaintiffs conclude that the claims here arise out of an independent duty created by the North Carolina Patient Protection Act, *not* out of the network agreement or the terms or benefits from ERISA plans. Id.

Plaintiffs cite to at least two lawsuits against UHC defendants by individual plaintiffs where the courts found that the ERISA plans were not implicated by state law claims, and thus

remanded to state court. (Document No. 32, p. 15, n. 1) (citing Manley v. UnitedHealth Grp. Inc., 2019 WL 3577683 (W.D. Ark. Aug. 6, 2019) and Hendrix v. UnitedHealth Grp. Inc., 2018 WL 1697391 (N.D. Ala. Apr. 6, 2018)).

Finally, Plaintiffs note that the "components of the Davila test are conjunctive – both must be present for the claim to be completely preempted." (Document No. 32, p. 13). If the Court finds that Plaintiffs' claims are "rate of payment" claims, "[t]he inquiry ends there" and "no further analysis under Davila is necessary." Id. (citing Gulf-to-Bay, 2018 WL 3640405, at *3)

This matter presents a close question. In considering whether this action is a "rate of payment" or "right of payment" dispute, the undersigned finds Defendants' "Summary Of Argument" to be illuminating. Defendants state in pertinent part:

> Providence is out-of-network today because, for over a year, it has refused to negotiate with United over reasonable **rates** for its services. Its proposed **rates** are many multiples of the Medicare-approved **rate** for anesthesiology services and the standard **rates** accepted by other anesthesiology groups in the relevant geographic area. United refuses to subject its membership to these unacceptably high **rates**, which ultimately lead to higher healthcare costs for all. For that reason, United asked Providence to agree to lower **rates** in line with its peers, as was (and is) United's right; Providence refused, as was (and is) its right.

(Document No. 27, p. 9) (citing Document No. 1-2, ¶¶ 87-88) (emphasis added). Thus, Defendants' own summary suggests that the crux of this case is a dispute about "rate of payment." Id.

The Complaint specifically contends that Defendants negotiated "for lower contract rates with Providence" in September 2019, but then served "a notice of termination of its contract" with Providence on September 30, 2019, rendering Providence an out of network provider on March 1, 2020. (Document No. 1-2, ¶¶ 86-87). "However, UHC claimed it 'remains open to negotiating a mutually agreeable participation agreement with competitive rates that would allow [Providence]

11

to continue in-network participation with [UHC]." (Document No. 1-2, ¶ 87). Apparently, Defendants proposed reducing "Providence's reimbursement **by over 60%**," a "rate reduction so drastic that it would be impossible for Providence to continue providing patients with the highest quality care." (Document No. 1-2, ¶ 88).

Plaintiffs contend that Defendants' failure to reimburse them at a reasonable rate "for medical care they received from out-of-network providers such as Providence is unfair and deceptive and violates state law," specifically, N.C. Gen. Stat. § 58-3-200(d). (Document No. 1-2, pp. 24-25). In addition, Plaintiffs contend that by failing to reimburse them "at the reasonable rate normally paid in North Carolina for the provision of medical services, Defendants have violated North Carolina law and breached their contract with Plaintiffs and other class members." (Document No. 1-2, p. 26).

Based on the parties' excellent arguments and cited legal authority, the undersigned is persuaded that this matter should be remanded. The cases cited by Plaintiffs, including several involving the UHC Defendants under circumstances similar to this case, seem to compel remand here.

One case Plaintiffs rely on in their reply brief is Freemont Emergency Services (Mandavia), Ltd. v. UnitedHealth Grp., Inc., 446, F.Supp.3d 700 (D.Nev. 2020). See (Document No. 32, pp. 16-17; Document No. 32-2). Plaintiffs in Fremont "are professional emergency medical groups that staff the emergency departments and other facilities throughout Nevada." Fremont, 446 F.Supp.3d at 703. Beginning in 2019, defendant United Healthcare Insurance Company continued to pay claims submitted by the plaintiffs, but reduced the "rates of reimbursement to levels ranging from 12-60%, below the usual and customary rates." Id. According to Plaintiffs' reply brief, UHC made the same argument in the Nevada case as it did here regarding "right of payment" versus

12

"rate of payment," and the Nevada District Court remanded that case to state court, finding that "claims involving the proper 'amount of payment' generally fall outside the scope of § 502(a)(1)(b)." (Document No. 32, p. 16) (quoting Fremont, F.Supp.3d at 705).

Plaintiffs note that upon remand in the case, a Nevada state court issued a $60 million verdict against UHC for the "very same conduct" of underpayment of out-of-network claims that "underlies Plaintiffs' allegations in this lawsuit." (Document no. 32, p. 17).

In Lone Star OB/GYN Associates v. Aetna Health, Inc., 579 F.3d 525 (5th Cir. 2009), "Lone Star sued Aetna in Texas court under the Texas Prompt Pay Act ("TPPA") … alleg[ing] that Aetna had not paid Lone Star's payment claims at the rates set out in the Provider Agreement." Lone Star, 579 F.3d at 528. The Fifth Circuit held that "determination of the rate that Aetna owes Lone Star under the Provider Agreement does not require any kind of benefit determination under the ERISA plan." Id. at 530. The Lone Star court later re-asserted that "where claims do not involve coverage determinations, but have already been deemed 'payable,' and the only remaining issue is whether they were paid at the proper contractual rate, ERISA preemption does not apply." Id. at 532.

Emergency Care Services of Pennsylvania, P.C. v. UnitedHealth Group, Inc., 515 F.Supp.3d 298 (E.D. Penn. 2021) is another case where plaintiffs allege that UHC defendants "slashed their rate of reimbursement" "beginning in January 2019." Emergency Care Serv. Of Penn., 55 F.Supp.3d at 303. The court opined that "[h]aving established that this action is basically a dispute over the rate of payment of claims, there can be little doubt that Plaintiffs' causes of action are not colorable under ERISA." Id. at 308. The United States District Court for the Eastern District of Pennsylvania then granted plaintiffs' motion to remand to state court. Id. at 311.

Another instructive decision, mentioned several times by Plaintiffs, is Gulf-To-Bay Anesthesiology Associates, LLC v. UnitedHealthCare of Florida, Inc. et al., 2018 WL 3640405 (M.D. Fla. July 20, 2018). In that case, like the one before this Court now, an anesthesiology practice group had an "in-network" arrangement with UHC defendants that was terminated, thus placing Gulf-To-Bay Anesthesiology Associates, LLC ("GTB") in "out-of-network" provider status. Gulf-To-Bay, 2018 WL 3640405 at *1. GTB alleged that the UHC defendants then consistently failed to reimburse it at the full rate it was entitled to under Florida statutory and common law. Id. The Florida court found that Gulf-To-Bay involved "rate of payment" claims and was therefore "outside the scope of section 502(a) of ERISA, and no further analysis under *Davila* is necessary." Gulf-To-Bay, 2018 WL 3640405 at *3. Gulf-To-Bay was remanded to Florida state court. Id. See also Orthopaedic Care Specialists, P.L. v. United Healthcare Services, Inc., 2020 WL 4891536 (S.D.Fla. Apr. 14, 2020) (remanding case to state court after finding defendant reimbursed plaintiff at "rates that deviate from statutory requirements"); and Orthopaedic Care Specialists v. Cigna Health And Life Ins. Company, 2021 WL 389130 (S.D.Fla. Jan. 15, 2021) (remanding case to state court after finding that the "rate of payment" analysis applies to both in-network and out-of-network providers, and that the issue in the case was whether plaintiff had been *fully* compensated/reimbursed by defendant).

In summary, while the question is interesting and close, the undersigned finds Plaintiffs' arguments most persuasive. Although this case is similar to several of the cited cases, it is somewhat unique in that Plaintiffs include both an anesthesiology provider ("Providence") *and* individual/proposed class plaintiffs ("Patient Plaintiffs") who contend they were not properly reimbursed for medical services. To the extent this uniqueness creates any doubt in the proper result, the undersigned is guided by well-established precedent holding that any such doubt should

14

be resolved in favor of remand. See Wolfe FA, LLC v. Bula Def. Sys., Inc., LLC, No. 1:19-CV-124-MR, 2019 WL 3783308, at *2 (W.D.N.C. Aug. 12, 2019)

> Federal courts are "obliged to construe removal jurisdiction strictly because of the 'significant federalism concerns' implicated." Dixon v. Coburg Dairy, Inc., 369 F.3d 811, 816 (4th Cir. 2004) (en banc) (quoting Mulcahey v. Columbia Organic Chems. Co., 29 F.3d 148, 151 (4th Cir. 1994)). As such, **courts must "resolve all doubts in favor of remand**." Strawn v. AT&T Mobility, LLC, 530 F.3d 293, 297 (4th Cir. 2008). "If federal jurisdiction is doubtful, a remand is necessary." Mulcahey, 29 F.3d at 151.

Id. (Emphasis added).

Consistent with Plaintiffs' arguments and cited caselaw, the undersigned finds that Plaintiffs claims fall outside the scope of ERISA, and thus no further analysis is necessary, and remand should be granted.[1]

## IV. RECOMMENDATION

**FOR THE FOREGOING REASONS**, the undersigned respectfully recommends that Plaintiffs' "Motion To Remand" (Document No. 19) be **GRANTED**.

## V. TIME FOR OBJECTIONS

The parties are hereby advised that pursuant to 28 U.S.C. § 636(b)(1)(C), and Rule 72 of the Federal Rules of Civil Procedure, written objections to the proposed findings of fact, conclusions of law, and recommendation contained herein may be filed within **fourteen (14) days** of service of same. Responses to objections may be filed within fourteen (14) days after service of the objections. Fed.R.Civ.P. 72(b)(2). Failure to file objections to this Memorandum and Recommendation with the District Court constitutes a waiver of the right to *de novo* review by the District Court. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005); United States v.

---

[1] Plaintiffs' second argument that their claims do not relate to ERISA, but arise solely from North Carolina statute and common law appears to also be compelling but does not require additional analysis under these circumstances. See (Document No. 20, pp. 20-21).

Benton, 523 F.3d 424, 428 (4th Cir. 2008).  Moreover, failure to file timely objections will preclude the parties from raising such objections on appeal.  Id.  "In order 'to preserve for appeal an issue in a magistrate judge's report, a party must object to the finding or recommendation on that issue with sufficient specificity so as reasonably to alert the district court of the true ground for the objection.'"  Martin v. Duffy, 858 F.3d 239, 245 (4th Cir. 2017) (quoting United States v. Midgette, 478 F.3d 616, 622 (4th Cir. 2007)).

**IT IS SO RECOMMENDED**.

Signed: August 16, 2022

David C. Keesler
United States Magistrate Judge